GEORGE T. WEYMOUTH,

*vs.*

DELAWARE TRUST COMPANY, a corporation of the State of Delaware, and GEORGE T. WEYMOUTH, Trustees under a certain Trust Agreement dated January 10, 1940.

*New Castle, January 11, 1946.*

*William S. Potter* and *Daniel F. Wolcott,* for complainant George T. Weymouth.

*Collins J. Seitz,* for respondent Delaware Trust Company, trustee.

PEARSON, Vice-Chancellor: The question is whether a trust may be revoked by the sole beneficiary, who is also the settlor, where the trust instrument contains provisions declaring the trust irrevocable and attempting to restrict anticipation, alienation, or transfer of the beneficiary's interest under the trust, and to limit the rights of his creditors with respect to his interest.

In January 1940, complainant, the corporate respondent, and one C. R. Martin entered into a trust agreement. Complainant was the settlor, and he, the corporate respondent, and Martin were the trustees. Complainant transferred securities and cash to the trustees to be held subject to the terms of the agreement. These include a direction that the trustees shall manage and invest the trust property and

"* * * shall pay the net income of the Trust Fund to the said Trustor in monthly or other convenient installments during his life; provided, however, that the Trustees shall retain so much of the net income of the Trust Fund as may from time to time be designated in writing by the Trustor, which said income so retained by the Trustees shall be added to, commingled with and become a part of the corpus of the Trust Fund. Upon the death of the Trustor, George T. Weymouth, the Trust Fund herein created shall forthwith terminate, and the corpus of the Trust Fund as then constituted together with any income accrued thereon shall be transferred, set over and delivered by the Trustees to the executors or administrators of the Trustor's estate to be held and administered in the manner provided by the last Will and Testament of the Trustor, or if he shall die intestate, or fail to direct by will the distribution thereof, according to the intestate law of the State of Delaware."

The agreement also provides in a paragraph designated I (2):

"The interest of the beneficiary hereunder, either as to income or principal of the Trust Fund, shall not be anticipated, alienated, or in any other manner assigned, or transferred by said beneficiary, nor

shall the same be subject to any legal process, bankruptcy proceedings or the interference or control of creditors or others. All payments of income and principal herein provided for shall be made by the Trustees into the hands of the beneficiary entitled thereto, or mailed to such beneficiary's last known address, or deposited to the account of such beneficiary in a bank or trust company of good standing and responsibility, without regard to any order or assignment purporting to transfer the same to any other person. * * *"

In a later paragraph, it is provided:

"This trust shall be irrevocable."

The only express indication, contained in the agreement, of the purpose or motive for the creation of the trust is the recital that "the Trustor desires to establish a trust of certain securities and cash * * *." In the bill, complainant alleges:

"At the time of the execution of the said Trust Agreement, the complainant was of the opinion that such a trust would enable him to save money and reduce the inheritance taxes upon his estate at the time of his death. It was for those purposes that the complainant created said trust."

Answering that paragraph, the corporate respondent states that it has no definite knowledge of the matters and things thus set forth, "but is informed and believes that they are true and admits the same for the purpose of this suit without in any wise conceding the same to be a limitation upon the legal effect, if any, of paragraph I (2) of the said Trust Agreement" quoted above.

The three trustees proceeded to administer the trust. In March 1945, Martin resigned as trustee and no successor to him has been chosen. In May 1945, complainant wrote a letter to the corporate trustee stating that he was advised that he had the power to revoke it, and that he did thereby exercise that power and direct the corporate trustee to deliver to him all properties constituting the corpus of the trust. The corporate trustee declined to comply, and asserts in its answer that because of the "spendthrift provisions"

and the irrevocable character of the trust, complainant is without power to revoke it.

Both parties accept it to be a general rule that where the settlor is the sole beneficiary and is not under an incapacity, he may compel the termination of the trust which he created. See *H. M. Byllesby & Co. v. Doriot*, 25 *Del. Ch.* 46, 12 *A.* 2d 603. Complainant, the settlor, is entitled to all net income to be distributed, and at his death, the fund remaining is distributable to his executors or administrators. He is, therefore, the "sole beneficiary" of the trust, in the sense in which we are now considering that expression. *DuPont, et al., v. DuPont, et al.,* 19 *Del. Ch.* 131, 164 *A.* 238; 1 *Scott on Trusts,* § 127.1.

It is apparent that by the terms of the agreement, revocation is forbidden: the trust is expressly declared "irrevocable"; the direction that the beneficiary's interest shall not be anticipated is of like import; and it may well be that the directions that his interest shall not be alienated, assigned, or transferred, or subject to creditors' interference or control imply a similar intent of the parties to the agreement. However, the statement in a trust instrument that the trust is irrevocable is not sufficient to prevent termination by the sole settlor who is the sole beneficiary. *H. M. Byllesby and Co. v. Doriot, supra.* In determining whether a trust may be lawfully revoked, it would seem reasonable that directions prohibiting revocation which happen to form a part of terms commonly denominated by the classification "spendthrift trust provisions" should be accorded no more importance than the express statement that the trust shall be "irrevocable." If the intent evidenced by the trust instrument were deemed determinative, clearly, in either case, intended irrevocability is indicated.

Concerning somewhat related questions, complainant cites many authorities for the proposition that attempted restraints (spendthrift trust provisions) on the voluntary or involuntary transfer of the interest of a beneficiary who

is the settlor are ineffective. *Brown v. Macgill*, 87 *Md.* 161, 39 *A.* 613, 39 *L. R. A.* 806, 67 *Am. St. Rep.* 334; *Jamison v. Mississippi Valley Trust Co.,* (*Mo.*) 207 *S.W.* 788; *Pacific National Bank v. Windram*, 133 *Mass.* 175; *McColgan v. Walter Magee*, 172 *Cal.* 182, 155 *P.* 995, *Ann. Cas.* 1917*D,* 1050. *Annotations* 119 *A.L.R.* 19, 35; 138 *A. L. R.* 1319, 1323; 1 *Restatement of Trusts*, § 156; 1 *Scott on Trusts*, § 156.

The corporate trustee relies strongly on *Ashhurst's Appeal*, 77 *Pa.* 464; *Rehr v. Fidelity-Philadelphia Trust Co.,* 310 *Pa.* 301, 165 *A.* 380, 91 *A. L. R.* 99; *Hackley v. Littell,* 150 *Mich.* 106, 113 *N.W.* 787. In the *Ashhurst* and *Hackley* cases, the courts apparently considered that the trusts were created to protect the settlors from extravagance or improvidence. In this connection, the respondent corporate trustee has taken the position in its main brief that

"It must be admitted on the basis of the pleadings herein that the trust was not created to protect the settlor from his own folly."

In the *Rehr case* [310 *Pa.* 301, 165 *A.* 380], the court said:

"It will be noticed that even plaintiff's life estate is subject to a spendthrift trust, and this we have always held to be sufficient of itself to sustain the trust."

The court does not discuss possible differences in result in situations in which the settlor and beneficiary are different persons and situations in which they are the same person; and unless it be that the court felt that "spendthrift trust provisions" of themselves disclose an intent to protect the settlor from his improvidence, the reasons for the holding are not apparent. Compare: *Long v. Tradesmen's Nat. Bank & Trust Co.*, 108 *Pa. Super.* 363, 165 *A.* 56; 3 *Scott on Trusts*, § 339; Note: 43 *Yale L.J. pp.* 342-344. Accordingly, I am not persuaded that we should in Delaware adopt the conclusion of the court in the *Rehr* case. A rule which seems more consistent with our law concerning revocability is that the mere existence of "spendthrift trust provisions" in a trust created by the sole beneficiary should not prevent revocation. 2 *Restatement of Trusts*, § 339; 3

*Scott on Trusts,* § 339; *Griswold, Spendthrift Trusts,* § 497.

The corporate trustee further contends that, in any event, a Delaware statute authorizes the creation of a "spendthrift trust" by a settlor for his own benefit, and that it follows as a legal consequence, that the beneficiary may not terminate or revoke the trust. The statute reads thus (*Rev. Code of Del.* 1935, § 4415) :

"CREDITORS AND ASSIGNEES OF A BENEFICIARY OF A TRUST:—The creditors of a beneficiary of a trust shall have only such rights against such beneficiary's interest in the trust property or the income therefrom as shall not be denied to them by the terms of the instrument creating or defining the trustor[1] by the laws of this State; provided, however, that if such beneficiary shall have transferred property to the trust in defraud of his creditors the foregoing shall in no way limit the rights of such creditors with respect to the property so transferred. Every interest in trust property or the income therefrom which shall not be subject to the rights of the creditors of the beneficiary, as aforesaid, shall be exempt from execution, attachment, distress for rent, and all other legal or equitable process instituted by or on behalf of such creditors. Every assignment by a beneficiary of a trust of his interest in the trust property or the income therefrom which is, by the terms of the instrument creating or defining the trust unassignable, shall be void."

This section deals specifically with restrictions upon the rights of creditors of a beneficiary with respect to trust property, and restrictions upon assignments by a beneficiary. Assuming, without deciding, that a settlor-beneficiary may, as the respondent argues, validly create such restrictions, this will not aid the respondent. The statute prescribes express consequences of restrictions of the particular kinds dealt with, and makes no mention of revocability. It would seem to me unwarranted to construe the language of the act as requiring the alteration urged by the respondent in the law otherwise applicable with respect to revocability.

It follows that the trust should be declared terminated, and the prayers of the bill granted.

A decree accordingly will be advised.

---

[1] "Trustor" is here apparently a misprint of the words "trust or".