SARAH C. DE ROUSSE, Appellee, v. FRANK WILLIAMS et al., Appellants.

TRUSTS: Spendthrift Trusts—When Subject to Debts of Cestui.
1  One may not, under the guise of a spendthrift trust, trustee *his own property* and place it beyond the reach of his creditors. Evidence reviewed, and held sufficient to show that certain trust property had actually been acquired and in reality purchased by the *cestui que trust*, (a) by reason of a general family settlement of an estate, (b) by reason of the abandonment of a right to contest a will, and (c) by reason of the surrender

by the *cestui que trust* of certain property devised to him.

**DIVORCE: Decree—Nature—Satisfaction—Spendthrift Trusts.** A final decree awarding alimony, while constituting a judgment, may not be satisfied out of the property of a spendthrift trust of which the defendant in execution is the *cestui que trust,* when such trust property has not been acquired by reason of any consideration furnished by said *cestui que trust.*

**CONTRACTS: Consideration—Spendthrift Trusts.** A recital in the provisions of a spendthrift trust that the *cestui que trust* accepts the provisions thereof in lieu of a devise to him in a will, clearly reveals that the *cestui que trust* himself furnished an adequate consideration for the said trust.

**WILLS: Requisites and Validity—Non-self-executing Clause Penalizing Contest.** A clause in a will providing that a devisee who contests the same shall forfeit the devise to him, is not self-executing. In other words, a violation of such clause does not, *ipso facto,* invest an heir or devisee who does not contest with title to his portion of the forfeited devise. Such favored heir or devisee is simply armed with an election to take or not to take.

**WILLS: Requisites and Validity—Penalizing Contest—Conditions Subsequent.** Principle recognized that forfeitures for breach of conditions subsequent are in disfavor. So held with reference to a will clause penalizing a contest.

**CREDITOR'S SUIT: Property Subject—Property Forfeited to Debtor.** Principle recognized that a debtor is under no legal obligation to accept property under a forfeiture in his favor, in order that his creditor may be able to satisfy his claim.

**CONTRACTS: Consideration—Materiality of Recitals.** The recital of a clear, definite and specified consideration for a contract is very influential on the question of consideration.

**CREDITOR'S SUIT: Property Subject—Consideration Paid.** A creditor, in subjecting the property of his debtor to the satisfaction of his claim, is by no means limited to the amount which the debtor paid for the property.

**CREDITOR'S SUIT: Allowable Remedy—When Creditor May Resort to Equity.** A creditor is not compelled, in order to satisfy his claim, to proceed *at law* against property held by the debtor under uncertain title, when the debtor has unquestioned title to property which may be reached *in equity.* So held as to a spendthrift trust.

CREDITOR'S SUIT: Allowable Remedy—Insolvency—How Shown.
Proceedings in equity by a creditor to satisfy his judgment are allowable without the return of an execution *nulla bona* when it otherwise appears that the debtor is insolvent.

*Appeal from Page District Court.*—A. B. THORNELL, Judge.

THURSDAY, OCTOBER 25, 1917.

THE question is whether what is claimed to be property impressed with a spendthrift trust for defendant Frank Williams was rightly subjected to an order in a divorce decree granting plaintiff, who was then the wife of said Williams, alimony.—*Affirmed.*

*Thomas W. Keenan* and *Parslow & Peters,* for appellants.

*Earl R. Ferguson* and *C. R. Barnes,* for appellee.

1. TRUSTS: spendthrift trusts: when subject to to debts of *cestui.*

SALINGER, J.—I. This is an action in equity to subject certain funds in the hands of the defendant Henry Read, as trustee, to the payment of a decree in alimony held by appellee against defendant Frank Williams, who, at the time of the rendition of said decree, was her husband.

The essential controversy seems to be over whether a trust fund provided for this judgment debtor was in fact purchased by him or obtained with consideration flowing from him, and whether, as to the recital in the trust agreement that it was upon a consideration, this plaintiff is in position to object to having such recital varied by oral testimony that there was in fact no consideration.

2. DIVORCE: decree: nature: satisfaction: spendthrift trusts.

The written agreement upon which appellants rely constitutes a spendthrift trust. If there be nothing to avoid it, plaintiff cannot subject the property impressed with that trust. Her decree awarding alimony

is a judgment for the purpose of subjecting what is the property of defendant. A final decree awarding alimony is a judgment for all purposes. *Patton v. Patton,* 123 N. Y. Supp. 329; *Shepherd v. Shepherd,* 100 N. Y. Supp. 401 (103 N. Y. Supp. 1141); 14 Cyc. 796; *Rogers v. Rogers,* (Ind.) 89 N. E. 901; *O'Hagan v. Executor of O'Hagan,* 4 Iowa 509. It has the protection of the "full faith and credit" clause of the Constitution. *Sistare v. Sistare,* 30 Sup. Ct. Rep. 682; *Barber v. Barber,* 21 How. (U. S.) 582; *Arrington v. Arrington,* (N. C.) 37 S. E. 212; *Wagner v. Wagner,* (R. I.) 57 Atl. 1058; *Bullock v. Bullock,* (N. J.) 31 Atl. 1024; *Britton v. Chamberlain,* (Ill.) 84 N. E. 895. Conveyances in fraud of it may be set aside. *Picket v. Garrison,* 76 Iowa 347; *Walker v. Walker,* 127 Iowa 77; 14 Cyc. 798. But it is not more than a judgment. And if the trust was not bought by the defendant Frank, a judgment could not be satisfied out of the trust property.

We have no occasion to decide whether Frank gave consideration for the trust of which he is the beneficiary, were it the fact that his father, now deceased, created the trust. His father did not create it. The most there is for so claiming is hearsay testimony to the effect that the father desired the making of such a trust, and that his widow, the stepmother of Frank, made the trust in suit out of deference to the wishes of the father. The question is what, if any, consideration Frank furnished for what he gets by the trust; whether he did not, in effect, buy this, and so place the case within the class which prohibits a debtor from trusteeing his own.

The trust agreement was signed by the widow, by Frank, and by Read, the trustee. There is testimony given by others than the widow that she desired no consideration, and that, in the negotiations, no consideration from or surrender of property by Frank was mentioned. We gather that, on September 11, 1911, when the paper was

signed, no public steps had been taken to contest the will of the father, by which the widow was most liberally endowed, in addition to what she had received in the lifetime of her husband. Others than the widow gave testimony that, therefore, when she signed, she was not influenced by fear of a contest. It would seem that no one but she could competently say that she had no fear of a contest and no knowledge of steps looking to one, because no such steps were at that time contemplated or publicly taken.

Cleared of these various considerations, we reach inquiry into whether the trust rests, in whole or in part, upon a relinquishment on the part of Frank of a substantial right to object to the will of his father, and whether the trust is supported by being a step in a general family settlement.

II. The will contained a provision that, if any one or more of the heirs or legatees shall attempt to break the will, then bequests made therein to such legatee or legatees shall be cancelled, "and they shall have none of said bequests and no property whatever from my estate, but the distributive share alike among my other legatees under this will." The son Ed. did institute what is a contest (*Moran v. Moran*, 144 Iowa 451), alleging that the will was obtained by undue influence of the widow, and that the deceased was of unsound mind. It is true Frank was not, *eo nomine*, a party to this contest, but that is not quite decisive of the present point. Time was given to file objections to the will. The widow applied to be made special administratrix. The day before they were filed, Frank made application to have his brother Ed. made special administrator. Frank verified the application therefor before the attorney, who asked time.

Unless the contest was won, the penalty clause in the will would cancel a bequest of something like 138 acres

given Ed. In pursuance of a settlement between Ed. and the widow, made about a week before the trust agreement was made, the objections to the will were withdrawn. None but these two were consulted as to that settlement, and the contract of settlement was signed by them only. This settlement provided, or at least it was contemplated, that all the heirs should sign. It was delivered to Ed. to have it thus signed, but it was not done. This settlement provided that Ed. should have clear title to said 138 acres, which, without winning the contest, he would forfeit, and on which the will gave the widow a life estate. It was further stipulated therein that that contemplated litigation should be stopped, and all difficulties between the parties "wiped out." In pursuance thereof, the widow promptly made deed.

There was much hostility in the settlement, arising from the size of allotment that had been made to the widow. It is in testimony that Read, who, in a way, represented the family, was interested in this matter to stop litigation and to assist the heirs in getting a fair settlement; that in this settlement were discussed all the phases of what had been given the widow in the lifetime and by the will; that finally an adjustment was reached which, it is said, did not include any controversy concerning the trust fund. One item in the settlement was the furnishing of $200 for the care and education of one of Frank's daughters. This daughter and another received $2,500 in the will, and, in the settlement, additional property worth about $1,500. It seems to be conceded that the settlement made no provision for Frank except as to certain promissory notes which were the property of the estate, did not belong to the widow as an individual, and which were the sole subject of the trust which she afterwards created. There is some evidence in the so-called corrected abstract filed by

appellee which, while rather confused, gives color to the claim that, while the matter was not completed when the question of settling with Frank was brought up in the general settlement, it was considered. Let it further be noted that, though it is said that Frank was not a party to the contract of settlement, it is nowhere said that this contract did not provide for a settlement with Frank, though he was not a party thereto in terms.

We incline to agree with the opinion of the trial court that the spendthrift trust was, in effect, a turning over to the trust of property belonging to the estate of Frank's father, and turned over by the widow, who created the trust; and that a general family settlement, including the abandonment of the contest by any who had the right to institute it, was one of the considerations for the trust. And Frank was one party who had already interested himself in a contest, or was likely to do so, and who had the right to institute a contest.

2ª

3. CONTRACTS: consideration: spendthrift trusts.

Certain lots were devised to Frank by the will, absolutely. Appellee contends that, by the recital of considerations in the trust agreement, Frank relinquished title to these, and that, this being so, of course, he paid consideration for the benefit of the trust. If the recitals in the agreement are fairly susceptible of that construction, the point is well made, because the only answer is that Frank did not make a formal conveyance. The recitals are that, as consideration, Frank takes the trust "as his full share" of his father's estate. Appellants themselves say that Frank had then nothing to receive from that estate; that he had all of his share. If the recital is not to be held to mean nothing, it must mean that he took the trust provisions in lieu of what he had; that he surrendered

what he 'had. We think *Baldwin v. Hill,* 97 Iowa 586, holds that the failure to make such conveyance is not, in the circumstances, controlling.

2-b

It is contended by appellees that, the moment Ed. instituted a contest, Frank, as one of the other heirs, became entitled to a part of the land devised to Ed., and that his failure to oppose, if not his consent to the reinvesting Ed. with that land, was a valuable consideration for the trust; that, while it is true that the widow, who created the trust, did not obtain any of Ed.'s land, the fact that she made a settlement through which she obtained something for being able to give Ed. clear title, operates as a consideration, because this benefit to the widow was obtained by the failure of Frank to assert his rights in Ed.'s land. The appellant responds that forfeiture clauses penalizing a contest of a will are conditions subsequent, and to this appellee agrees. There is no dispute as to the general rule that forfeitures for breach of condition subsequent are not favored, and that equity will not enforce such. The real difference between the parties is this: Appellants say that such a forfeiture is not self-executing; that, at most, it gives Frank an election whether to enforce or not. Appellee says that, while creditors may not compel a debtor to exercise an election by which he would obtain property out of which they might be satisfied, here is no such case; that, the moment Ed. instituted his contest, the land willed to him ceased to be his unless he could prevail in the contest, or settled it, and thereby got the same land, or its equal in value, as his distributive share; that the institution of the contest was a declaration not to be

4. WILLS : requisites and validity : non-self-executing clause penalizing contest.

5. WILLS : requisites and validity : penalizing contest : conditions subsequent.

bound by the will; that, therefore, and at all events, the land bequeathed to Ed. as to him remained in the estate undisposed of by will; that, of necessity then, so far as Ed. is concerned, the title to all the land in the estate which might be disposed of by will became, if in fact it did not always remain, the property of the heirs, share and share alike; and that, so, this is not a case of enforcing or not enforcing a forfeiture, or of compelling a debtor to obtain property, but an attempt to make the debtor account for property which he had and is seeking to give away for the purpose of defeating his creditors.

6. CREDITOR'S SUIT: property subject: property forfeited to debtor.

We are of opinion that the forfeiture clause in the will was not self-executing; that it gave no more than a right to the land of Ed., which Frank was not obliged to assert to benefit his creditors; and that a failure to claim a share in this land was not a giving away of what had vested, but an election not to acquire property, and, therefore, the forfeiture clause did not furnish a consideration for the trust. See Tiedeman on Real Property, Sec. 277; *Preston v. Bosworth,* (Ind.) 55 N. E. 224; *Nevitt v. Woodburn,* (Ill.) 60 N. E. 500; Tiffany on Real Property, Sec. 66; *Robertson v. Schard,* 142 Iowa 500; *Merchants Nat. Bank v. Crist,* 140 Iowa 308.

7. CONTRACTS: consideration: materiality of recitals.

III. If the widow intended a mere gift, there was no occasion to recite a consideration. Possibly it would have helped establish intent to make a gift if the alleged donor had been, as she was not, made a witness. If it was understood that no consideration was given, it is difficult to understand why the writing said that the trust was "for the consideration hereinafter mentioned," and that, "in consideration of the foregoing," Frank accepts the benefits accruing to him under and by virtue of the trust created,

"as his full share of the estate of T. J. Williams, deceased."

8. CREDITOR'S SUIT: property subject: consideration paid.

IV. That the settlement, the abandonment of the contest and the surrender of the lots devised to Frank constitute consideration, is hornbook law, but it is insisted that, though this be so, it does not subject the trust property; that it merely makes the trust enforcible; and that, therefore, all that can in any event be subjected is the consideration paid. We are not impressed with the argument. When a debtor purchases property, what he pays for it is gone from his creditor. That alone is a sufficient reason why such consideration may not be subjected to the debt. By the same token, the property bought is the fund the creditor may resort to. He cannot complain that the debtor did not get enough. He has the right to avail himself of the profits if the debtor did not pay enough.

V. There is a fierce controversy, most elaborately briefed, on whether these recitals may be varied in parol. The utmost effect of these recitals is to prove consideration was furnished. As we find this to be true without these recitals, we do not deem it necessary to determine whether plaintiff is in position to object to parol variance.

9. CREDITOR'S SUIT: allowable remedy: when creditor may resort to equity.

VI. It is urged that appellee has no standing in equity because she has shown merely that the garnishee answered that he had no property belonging to Frank, which does not prove that remedies at law would not satisfy her claim. It is further said that the lots bequeathed to Frank could have been seized; that, if the bequest proved that Frank had something to relinquish for the sake of the trust, that same something was available also for satisfaction at law; that this is so of his right to the land bequeathed to Ed.

In general, equity will reach a trust on consideration. 2 Pomeroy on Equitable Remedies, Sec. 879. The remedy at law is not adequate where seizure of property at law still leaves the title uncertain or under a cloud. *Miller v. Dayton,* 47 Iowa 312. Certainly a seizure of Ed.'s land comes within this class, and equally certain is it that the widow had at least enough color of title in the lots devised to Frank as that their seizure at law would not have given complete satisfaction. We incline to think, too, that the defendants are in such sense volunteers as that the burden was on them to show that Frank had sufficient property out of which satisfaction could be had at law. See *Campbell v. Campbell,* 129 Iowa 317; *Strong v. Lawrence,* 58 Iowa 55; *Elwell v. Walker,* 52 Iowa 256; *Loving v. Pairo,* 10 Iowa 282; *Gwyer v. Figgins,* 37 Iowa 517; *Gordon v. Worthley,* 48 Iowa 429; *Smalley v. Mass,* 72 Iowa 171; *Burlington P. H. Assn. v. Gerlinger,* 111 Iowa 293.

10. CREDITOR'S SUIT: allowable remedy: insolvency: how shown.

Moreover, return *nulla bona* and the like is not required if it appears otherwise that the debtor was insolvent. The trial court finds that this was the fact, and we see no reason for interfering with that finding.

It follows that the decree below must be—*Affirmed.*

GAYNOR, C. J., LADD and EVANS, JJ., concur.